UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  7/24/2020
```

------------------------------------------------------------X

In the matter of the Application of       :
       :
ANA CHRISTINA DEGENS       :          20-mc-237 (JGK) (RWL)
       :
for an Order Authorizing the Issuance of    :      **DECISION AND ORDER**
Subpoenas pursuant to 28 U.S.C. § 1782  :    **AUTHORIZING SUBPOENAS**
to JPMorgan Chase Bank, N.A., J.P. Morgan  :  <u>**PURSUANT TO 28 U.S.C. § 1782**</u>
Securities LLC, Wells Fargo Bank, N.A.,  :
HSBC Bank USA, N.A., Safra National Bank  :
of New York, Favil LLC, Tavil Group, Ltd.,  :
Arvil International Corp., Kavil Investments  :
Limited, Vilvil Group Limited, Grant, Herman,  :
Schwartz & Klinger LLP, and Loeb, Block  :
& Partners LLP.  :
       :

------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

     Applicant Christina Ana Degens ("Applicant" or "Degens") is party to an acrimonious matrimonial dispute in Brazil. In aid of discovery into marital assets for the Brazil case, Degens has filed an ex parte application pursuant to 28 U.S.C. § 1782 requesting that the Court issue subpoenas to several business entities related to her ex-partner that are believed to have held or moved marital assets, financial companies that have held bank or securities accounts of Degens' ex-partner or his business entities, and law firms that have provided legal services to them. For the reasons set forth below, Applicant's request is GRANTED.[1]

---

[1] "[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (collecting cases).

## Background[2]

### A.    The Action for Which Discovery Is Sought

Degens and her former common-law husband, Pedro Weil ("Weil"), are presently engaged in litigation (the "Brazilian Action") in a Brazilian family court (the "Brazilian Court").  (Degens Decl. ¶ 2.)  On November 18, 2019, the Brazilian Court rendered a partial judgment declaring that Degens and Weil had "cohabited in a stable union" from September 2012 to September 3, 2018, "under the partial community property regime." (Riback Decl. Ex. 3 ¶ 3, at 2743 (English translation).)  Brazilian law apparently provides Degens with a claim for alimony and half the increase in Weil's assets during the period they were together.  (Imparato Decl. ¶¶ 6-8.)  The Brazilian Court ruled, however, that Degens' counterclaim for alimony and her share of property "require the production of evidence" to further address those matters.  (Riback Decl. Ex. 3 ¶ 5, at 2744.)

### B.    The Target Entities for Which Subpoenas Are Sought

Weil has amassed a considerable financial fortune, spread across numerous entities in multiple countries.  As Degens shows in her declaration, several of these entities are administered from New York or otherwise have transacted business in New York.  Weil used New York firms to administer offshore assets and entities and also maintained bank and securities accounts in New York for himself and some of his

---

[2] The background is drawn from Applicant's Memorandum of Law in Support (Dkt. 2) ("Mem."), supporting declarations, and accompanying exhibits.  The four declarations are the Declaration of Ana Christina Degens, dated June 17, 2020 (Dkt. 5) ("Degens Decl."); the Declaration of Stuart M. Riback, dated June 22, 2020 (Dkt. 4) ("Riback Decl."); the Declaration of Philip Mindlin, dated June 17, 2020 (Dkt. 6) ("Mindlin Decl."); and the Declaration of Natalia Imparato, dated June 17, 2020 (Riback Decl. Ex. 2 (English translation)) ("Imparato Decl.").  Mr. Riback is Ms. Degens' attorney in this action.  Mr. Mindlin is Degens' cousin and an attorney.  And Ms. Imparato is a Brazilian attorney who represents Degens in the Brazilian marital litigation.

entities.   (Degens Decl. ¶¶ 17-44.)   Brazilian legal procedures, however, cannot effectively compel production of information from these entities, particularly with respect to assets and entities located abroad.   (Imparato Decl. ¶¶ 5-6.)   Degens thus has filed this application seeking the Court's assistance so that she can gather evidence relevant to the Brazilian Action.

The entities from whom Degens seeks evidence include the following:

1. Grant Hermann, Schwartz and Klinger LLP ("Grant"), a New York law firm that provided services to Weil or Weil-related entities.

2. Loeb, Block & Partners, LLP ("Loeb"), also a New York law firm that provided services to Weil or Weil-related entities.

3. Safra National Bank of New York ("Safra"), a bank headquartered in New York.

4. Favil LLC ("Favil"), a Weil-related entity that owns a New York City apartment, maintains a bank account at Wells Fargo in New York, and which was managed at least in part by the Grant law firm.

5. Arvil International Corp. ("Arvil"), a Weil-related entity administered from New York, New York by the Grant firm and with at least one corporate officer in New York, New York.

6. Tavil Group, Ltd. ("Tavil"), a Weil-related entity owning many artworks kept in the Manhattan apartment owned by Favil as well as a storage warehouse in Queens, New York.   Tavil maintained a securities account in this District with J.P. Morgan Securities LLC ("J.P. Morgan") and a line of credit with JPMorgan Chase Bank, N.A. ("Chase") in New York.   Many of Tavil's purchases were administered by the Grant firm.

7.      Vilvil Group Limited ("Vilvil"), a Weil-related entity that has maintained bank and securities account in this District with J.P. Morgan and Chase entities.

8.      Kavil Investments Limited ("Kavil"), a Weil-related entity that Degens believes is used by Weil to hold his interest in all his offshore entities.  It is the sole member of Favil.  Kavil maintained a bank account in this District with HSBC Bank USA, N.A. ("HSBC").

9.      Chase, a bank at which Weil maintained a checking account through Chase's Private Bank service and which provided a line of credit to Tavil.

10.     J.P. Morgan, a securities firm at which Tavil maintained a securities account through Chase in New York.  Vilvil also had a securities account at J.P. Morgan.

11.     Wells Fargo Bank, N.A. ("Wells Fargo"), a bank at which Grant maintained an account on behalf of Favil and for which Weil was asked to replenish funds.  The account was also used to pay expenses of Favil.

12.     HSBC, a bank at which Kavil maintained an account, one of Weil's offshore bank accounts.

**C.    The Discovery Sought**

Degens requests approval to issue subpoenas to each of the above entities to obtain documents and deposition testimony for the purpose of discovering information about assets to which she may have a right as will be determined in the Brazilian Action.

## Legal Standard

"In ruling on an application made pursuant to section 1782, a district court must first consider the statutory requirements and then use its discretion in balancing a number of factors." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012). Accordingly, the court must consider both statutory and discretionary elements.

There are three statutory requirements for granting an application pursuant to § 1782. Granting a request is authorized when: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Id.* All three statutory factors must be met in order for a district court to have the authority to grant a § 1782 request.

If an application satisfies the statutory factors, a court must exercise its discretion, guided by the "twin aims of the statute," namely "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (internal quotation marks and citation omitted); *accord Brandi-Dohrn*, 673 F.3d at 81. To aid in that analysis, the Supreme Court has prescribed four factors the court should consider in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

The four *Intel* factors are: 1) Whether the person from whom discovery is sought is a participant in the foreign proceeding, in which event the need for § 1782(a) aid

generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad; 2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; 3) Whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and 4) Whether the request is unduly intrusive or burdensome.   *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (citing *Intel*, 542 U.S. at 264-65).   If a § 1782 petition satisfies both the statutory requirements and the discretionary *Intel* factors, a district court may grant the petition.

## Discussion

Degens' application satisfies both the statutory requirements and the discretionary factors and thus warrants approval.

### A.   The Statutory Requirements Are Met

#### 1.   Persons Who Reside or Are "Found" in This District

The first statutory requirement is that the evidence sought comes from persons who reside or are "found" in this District.  All of the entities to whom Degens seeks to issue subpoenas pursuant to her application satisfy this requirement.

The Second Circuit recently held that "§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."  *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019).  Accordingly, if the subpoenaed entity is subject to general jurisdiction in this District, it "resides or is found" here.  *Id.* at 530. To establish specific jurisdiction for purposes of § 1782, the Second Circuit requires

that the discovery material sought "proximately resulted from the respondent's forum contacts . . . .  That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all." *Id.*  In contrast, "where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts."  *Id.*

For purposes of determining whether they reside or are found in this District, the entities from whom Degens seeks evidence fall into two categories: entities owned, controlled, or affiliated with Weil (the "Weil Entities"), and entities who provided services to or on behalf of Weil or the Weil Entities (the "Service Entities").

The Weil Entities consist of Arvil, Favil, Kavil, Tavil, and Vilvil.  As set forth in Degens' application and summarized above, each of these entities have placed assets in this District or have chosen to operate in or from this District.  (Degens Decl. ¶¶ 21-32, 35-39.)  The evidence sought by Degens is information about those assets and operations – the "proximate result" of the Weil Entities' contacts with this forum.  The Weil Entities thus are "found" in this District for purposes of § 1782.  *In re del Valle Ruiz*, 939 F.3d at 528.

The Service Entities are comprised by the law firms and banks – Grant, Loeb, Chase, HSBC, J.P. Morgan, Safra and Wells Fargo.[3]  Each of the Service Entities did business in this District with Weil or one or more of the Weil Entities.  (Degens Decl. ¶¶ 19-20, 23-25, 28-29, 31-34, 36, 39, 40-44.)  Chase, HSBC, J.P. Morgan, Safra, and

---

[3] Degens contends that Grant, Loeb, and Safra are based in New York, New York and subject to general jurisdiction here.  That may be so, but the Court does not have before it sufficient information to make that determination.

Wells Fargo all are financial institutions that have held assets of Weil or the Weil Entities, and the evidence sought by Degens from those institutions is the proximate result of their contacts here.  As for the two law firms, each has provided services to or on behalf of Weil or the Weil Entities, again being the proximate cause of the evidence sought by Degens.  Accordingly, each of the Weil Entities and Service Entities are "found" in this District for purposes of Degens' § 1782 application.  *In re del Valle Ruiz*, 939 F.3d at 528.

### 2. For Use in a Foreign Proceeding before a Foreign Tribunal

The second statutory requirement is easily satisfied.  Degens seeks to obtain evidence for use in the Brazilian Action being heard by the Brazilian Court.

### 3. Sought by an Interested Person

The third statutory requirement also is easily met.  A party to a foreign litigation is an "interested person" within the ambit of § 1782.  *Intel*, 542 U.S. at 256 ("litigants are included among, and may be the most common of, the 'interested person[s]' who may invoke § 1782"); *Esses v. Hanania*, 101 F.3d 873, 875 (2d Cir. 1996) (noting that legislative history of § 1782 indicates an "interested person" under § 1782 includes "a party to . . . foreign or international litigation").  Degens is exactly that – a party to foreign litigation in Brazil.

Accordingly, Degens' application satisfies the statutory requirements for approval of her § 1782 application.  As discussed next, the same is true for the factors affecting exercise of the Court's discretion.

### B. The *Intel* Discretionary Factors Are Satisfied

Each of the four *Intel* factors weigh in favor of granting Degens' application.

### 1. None of the Subpoena Targets Are Parties in the Brazilian Action

The first factor considers whether the person from whom the evidence is sought is before the foreign court such that production of the information could be compelled there. *Intel*, 542 U.S. at 264. If the information cannot be compelled in the foreign court, then there is greater need for assistance from U.S. courts. Here, none of the Weil Entities or Service Entities are party to the Brazilian Action. Accordingly, the first *Intel* factor favors granting Degens' application. *See, e.g.*, *In re Hornbeam Corp.*, No. 14 Misc. 424 (Part 1), 2014 WL 8775453, at *4 (S.D.N.Y. Dec. 24, 2014) (first *Intel* factor favored granting § 1782 application where New York banks and professional service providers were not expected to be parties to foreign litigation).

### 2. Granting the Application Will Assist the Brazilian Court

The second *Intel* factor focuses on the foreign tribunal and considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264. Here, the Brazilian Court will be deciding in the first instance a matrimonial matter directly involving Degens. There is no reason to believe the Brazilian Court would not be receptive to evidence gathered under § 1782, and no Brazilian rule, policy, or law prohibits or discourages the Brazilian Court from considering such evidence.[4] (Imparato Decl. ¶¶ 2, 10.) To the contrary, the Brazilian Court has expressly indicated that it will be holding future proceedings to

---

[4] To show that a foreign tribunal would not be receptive to evidence obtained through § 1782 requires "authoritative proof." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). Degens' Brazilian lawyer represents that she knows of no such authoritative proof. (*See* Imparato Decl. ¶ 10.)

receive evidence regarding the amount of alimony and division of property to be awarded to Degens.  Evidence of Weil's assets and financial activity will likely assist that effort.  The second *Intel* factor thus weighs in favor of granting the application.

### 3.    Not a Concealed Attempt to Avoid Foreign Restrictions

The third *Intel* factor looks to whether the § 1782 application "conceals an attempt to avoid foreign evidence-gathering restrictions."  *Intel*, 542 U.S. at 265.  As noted above, there is every reason to believe the evidence sought by Degens will be helpful to the Brazilian court in determining alimony and division of marital property. And, while Brazilian procedures do not provide an effective means for Degens to obtain the discovery she seeks, there is no evidence or suggestion that the Brazilian Court or Brazilian law prohibits her from availing herself of foreign procedural mechanisms such as § 1782.  (Imparato Decl. ¶¶ 5, 11.)  *See Intel*, 542 U.S. at 264 ("nonparticipants in the foreign proceedings may be outside the foreign tribunal's jurisdictional reach; thus, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid").  Nor is there any evidence or indication that Degens has filed the application to conceal efforts to avoid Brazilian restrictions or any other improper purpose.  (Imparato Decl. ¶ 11.)  The third factor favors granting the application.

### 4.    Requests Are Not Unduly Intrusive or Burdensome

The last *Intel* factor considers the extent to which the discovery sought is intrusive or burdensome.  *Intel*, 542 U.S. at 265; *see In re Auto-Guadaloupe Investissement S.A.*, No. 12 Misc. 221, 2012 WL 4841945, *4 (S.D.N.Y. Oct. 10, 2012) ("A court considering a request for discovery under § 1782 must also be mindful of

U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil Procedure"). To assess this factor, the Court thus must consider relevance and proportionality of the information sought as required under Rule 26(b)(1) of the Federal Rules of Civil Procedure.

The Court has reviewed the discovery requests and considered the proportionality factors.[5] The requests are targeted to discovering information about Weil's assets and finances. The issues for which that information is sought – determining alimony and division of property – are indisputably important to the parties' marital litigation. As attested to by Degens, the amounts at issue are vast (Degens Decl. ¶ 17), potentially in the tens of millions of dollars or higher. Weil no doubt has access to information about his own assets, while Degens currently only knows of partial, dated information. (Degens Decl. ¶ 11.) Weil is rich (possibly a billionaire), while Degens is not (though not poor). (Degens Decl. ¶ 17.)

The discovery sought – information about Weil's assets, finances, property transfers, and the like – all go to determining the financial stake to which Degens will be entitled under Brazilian law. (Imparato Decl. ¶ 6.) In the absence of the discovery, Degens – and the Brazilian Court – will have a far from complete picture of the property to be divided and the appropriate alimony to be paid. (Imparato Decl. ¶ 6.) Leaving it to Weil to present any such evidence obviously provides room for mischief. The discovery sought is thus quite important and will be of significant benefit to fair

---

[5] The proportionality factors are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

and just determination of the Brazilian financial issues.

Meanwhile, the burdens of the discovery do not outweigh the benefits.  Each of the targeted Service Entities are well-established, well-to-do banks and law firms.  The information sought is limited to relatively narrow subject matter:  financial information relating to Weil or any of the Weil Entities, correspondence concerning Weil or Degens, and the Brazilian Action.  Any burden to the Weil Entities is a byproduct of the corporate and financial structure created by Weil.

Apart from these considerations, there are three additional items that warrant attention.  First, one aspect of Degens' request is expansive, but not unjustifiably so.  The request is that the Court require the subpoena respondents to produce documents "no matter where in the world they may be maintained."  (Mem. 17-18.)  Discovery that includes ex-U.S. information is particularly important in this case because, as set forth by Degens, Weil has created a multi-national network of interconnected entities for holding his property (including at least the British Virgin Islands, Delaware, and the Bahamas).  (Degens Decl. ¶¶ 21, 25, 26, 35, 37.)  Most if not all the records sought should be available electronically and therefore of little burden to access and produce.  Accordingly, requiring production of documents no matter where they are deemed to reside is appropriate in this case.  *See In re del Valle Ruiz*, 939 F.3d at 533 (holding that § 1782 does not bar extraterritorial reach to documents in other countries that are in a party's possession, custody, or control); *accord In re Accent Delight International Ltd.*, No. 16 Misc. 125, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018) ("the plain language of Section 1782 imposes no geographical limit on the production of documents"), *aff'd*, 791 F. App'x 247 (2d Cir.

2019) (summary order); *In re Gemeinschaftspraxis Dr. Med. Schottdorf*, No. Civ. M19-88, 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) ("Section 1782 requires only that the party from whom discovery is sought be 'found' here; not that the documents be found here").

Second, Degens seeks documents from two law firms – Grant and Loeb.  Law firms are not immune from discovery, but discovery directed to them naturally raises potential concerns about attorney-client privilege and attorney work product.  That can easily be addressed through privilege logs; and as Degens aptly notes, much of the work performed by the law firms for Weil and the Weil Entities appears not to have been legal advice.  Rather, it was business related, involving, for example, a Grant partner's service as Deputy Operating Manager of Favil and managing business affairs of both Favil and Arvil.  From the information provided by Degens, Loeb appears to have provided advice with respect to asset preservation strategies. (Mindlin Decl. ¶¶ 3-4.)  That subject would be of direct relevance to the asset and finance issues at stake in the Brazilian Action.  And while advice about asset preservation may well have been legal in nature, implementation of preservation strategies likely would not.  Accordingly, concern for the attorney-client privilege should not be an impediment to granting discovery from the two law firms.

Finally, Degens not only seeks documents but also requests authorization to take a deposition of each of the subpoenaed entities.  At the same time, Degens represents that "we do not expect actually to do so" and "[m]ost likely, only a small number of depositions will be needed."  (Mem. at 20.)  Whether that will prove true remains to be seen.  But because the request is for only one deposition of each entity,

the Court finds it to be reasonable.

In sum, the Court finds that all *Intel* factors favor granting Degens' application and that granting the application will serve the statute's "twin aims" of providing efficient assistance in a foreign proceeding and encouraging reciprocal assistance by foreign tribunals.  *See Schmitz*, 376 F.3d at 84.  Accordingly, the Court will exercise its discretion to grant Degens' application.

## Conclusion

For the foregoing reasons, Applicant's request for issuance of subpoenas pursuant to § 1782 is granted in its entirety.  Accordingly,

1.     Applicant may serve subpoenas (the "Subpoenas") upon each of the Weil Entities and Service Entities (collectively, "Respondents"), accompanied by discovery requests substantially in the form attached as Appendix A to Exhibit A of the application (Dkt. 1).  A copy of this Decision and Order must accompany each Subpoena.

2.     Respondents shall respond to the Subpoenas, including by producing documents, within 20 days of service of the respective Subpoena on the respective Respondent, or at such other time as the parties may agree or the Court may direct.  Respondents shall each produce in response to their respective Subpoena all responsive documents in their possession, custody, or control, no matter where located.

3.     Respondents shall each appear for deposition and give testimony within 90 days of service of the respective Subpoena on the respective Respondent, or at such at such time as the parties agree or the Court may direct.

4.     Respondents retain their right to move to quash pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure.

5.     Stuart M. Riback, Esq. and any other attorneys affiliated with the law firm of Wilk Auslander LLP and admitted to the bar of the United States District Court for the Southern District of New York are appointed as examiners to (i) take depositions, (ii) obtain documents and information pursuant to the Subpoenas, and (iii) serve the Subpoenas pursuant to the Federal Rules of Civil Procedure.

6.     Applicant shall serve a copy of this Decision and Order on each Respondent within five days of entry of the Order and, upon such service, file affidavits of service with the Court.

SO ORDERED.

_____

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  July 24, 2020
          New York, New York